United States District Court
Southern District of Texas

**ENTERED**

October 18, 2016

David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

MICHAEL JONES,                    §
                                  §
       *Plaintiff*,               §
                                  §
v.                                §          CIVIL ACTION H-15-3270
                                  §
AMERICAN COUNCIL ON EXERCISE,     §
                                  §
       *Defendant*.               §

### MEMORANDUM OPINION AND ORDER

Pending before the court are (1) a motion for summary judgment filed by defendant American Council on Exercise ("ACE") (Dkt. 27); (2) a motion to exclude ACE's summary judgment evidence filed by plaintiff Michael Jones (Dkt. 39); (3) a motion to exclude ACE's new summary judgment evidence filed by Jones (Dkt. 49); and (4) a motion to exclude Jones's expert Robert Esquerre filed by ACE (Dkt. 46). After considering the motions, related filings, and applicable law, the court is of the opinion that the objections in the motions to exclude ACE's summary judgment evidence should be SUSTAINED IN PART AND OVERRULED IN PART, ACE's motion to exclude expert Robert Esquerre should be GRANTED IN PART AND DENIED IN PART, and the motion for summary judgment should be DENIED.

### I. BACKGROUND

This is a trademark infringement and unfair competition case relating to the term "Medical Exercise Specialist." Dkt. 5. Plaintiff Michael Jones, who holds an undergraduate degree in physical therapy and a doctorate degree in physiology, is the founder of American Academy of Health, Fitness & Rehabilitation Professionals ("AAHRFP"). *Id.* Jones claims that he created a program to train and certify fitness professionals who work with post-rehabilitation patients and that

he uses the term "Medical Exercise Specialist" in connection with the certification, course, and exam.  *Id.*  He has been using the term since 1994 and claims that he has spent hundreds of thousands of dollars advertising the program.  *Id.*

In the late 1990s, Jones requested that ACE certify his course as "ACE approved."  *Id.*  ACE approved the course for a fee, which Jones was required to renew periodically.  *Id.*  At some point, Jones discontinued renewing.  *Id.*

Jones contends that ACE eventually launched a competing certification, which it initially called "Advanced Clinical Exercise Specialist" and from 2008 through 2015 called "Advanced Health and Fitness Specialist."  *Id.*  Jones alleges that ACE began using the term "Medical Exercise Specialist" in 2015 to describe its competing certification.  *Id.*  Jones asserts that he owns a common-law trademark to the term "Medical Exercise Specialist," and he initiated this lawsuit to stop ACE from infringing on the mark.  *Id.*  Jones also seeks lost profits and other damages for ACE's alleged infringement.  *Id.*  ACE filed an answer in which it asserts various defenses including that its use of the term "Medical Exercise Specialist" is "fair use."  Dkt. 18.

ACE has filed a motion for summary judgment in which it argues that the court should grant summary judgment on all of Jones's claims in its favor on its fair use defense.  Dkt. 27.  ACE also asserts that it is entitled to summary judgment because Jones used the phrase "Medical Exercise Specialist" as both a certification mark to certify people who passed the test and also as a mark to sell products and services for training people to take the certification test.  *Id.*  ACE argues that using the mark for both things invalidates any common law trademark Jones may have had.  *Id.*  ACE additionally requests that the court grant summary judgment on its naked licensing defense,[1] arguing

---

[1] It does not appear that ACE specifically pled this defense in its amended answer.  *See* Dkt. 18.

that the term "Medical Exercise Specialist" has lost any trademark significance and should be deemed abandoned because Jones has not exercised any control over how certified Medical Exercise Specialists use the mark. *Id.* Jones contends that obvious factual issues preclude summary judgment on all of ACE's theories. Dkt. 37. Jones also asserts a plethora of evidentiary objections, and ACE moves to exclude Jones's branding expert, Robert Esquerre. Dkts. 39, 46, 49.

## II. JONES'S MOTIONS TO EXCLUDE EVIDENCE

Jones objects to evidence attached to ACE's motion for summary judgment and evidence attached to ACE's reply in support of its motion for summary judgment. Dkts. 39, 49. ACE attached forty-three exhibits to its motion for summary judgment. *See* Dkt. 27 & Exs. Jones objects to thirty-seven of the forty-three exhibits. *See* Dkt. 39. ACE attached sixty-three exhibits to its reply. Dkt. 44 & Exs. Jones objects to all of the reply exhibits except Exhibit A-54. Dkt. 49. The court will organize these objections into broad categories and rule on the categories rather than discussing each exhibit individually.

### A.      Curriculum Vitae (Ex. A-1)

Jones objects to Exhibits A-1, a curriculum vitae of one of ACE's experts, as hearsay. Dkt. 39. Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing;" and that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). While the curriculum vitae is technically hearsay and thus likely will not be admitted as evidence at trial absent a stipulation between the parties, this does not prevent the court from relying on the curriculum vitae to determine whether the expert is qualified, which is the reason ACE submitted the curriculum vitae. *See* Dkt. 52 (ACE explaining that the curriculum vitae is offered as background information to establish that this individual may give expert testimony). Moreover, the expert has testified that the document is indeed his curriculum vitae, *see*

3

Dkt. 27, Ex. 34 (ECF No. 28-10), which potentially makes this document admissible subject to Federal Rule of Evidence 807, the residual exception to the rule against hearsay.[2]  Jones's objection to the curriculum vitae at Exhibit A-1 is OVERRULED. However, Jones may reassert this objection prior to trial.

**B.      Incomplete Deposition Testimony (Exs. A-2, A-18, A-32, A-116A, A-116B)**

Jones objects to Exhibits A-2, A-18, A-32, A-116A, and A-116B, which are all deposition excerpts, under the Rule of Optional Completeness.  Dkts. 39, 49.  Under Federal Rule of Evidence 106, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time."  Fed. R. Evid. 106.  Because this is the summary judgment stage and Jones is free to complete any incomplete testimony cited by ACE in its response to the motion for summary judgment, these objections are OVERRULED.

Jones also objects to Exhibit A-116A at 151:18–21 under Rule 1002 "to the extent the witness is purporting to testify about actual records."  Dkt. 49.  ACE notes that in the cited testimony the witness does not refer to records and merely notes that ACE's programs are accredited and another organization's programs are not.  Dkt. 55.  ACE contends that this testimony is based on the witness's personal knowledge.  *Id.*  The court agrees.  Jones's objection is OVERRULED.

**C.      Online Dictionary Definitions (Exs. A-3, A-17, A-39)**

**1.      Hearsay.**  Jones objects to Exhibits A-3, A-17, and A-39, which are online dictionary

---

[2]      Under Rule 807, if a "statement has equivalent circumstantial guarantees of trustworthiness," "is offered as evidence of a material fact," "is more probative on a point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts," and "admitting it will best serve the purpose of these rules and the interests of justice," then a court may admit the evidence under the residual exception.  Fed. R. Evid. 807.

definitions, as hearsay.  Dkt. 39.  Exhibit A-3 is the definition of the term "bridge the gap."  *See* Dkt. 27, Ex. A-3.  ACE does not rely on this exhibit is its motion or reply, so the court need not address the hearsay objection.  Exhibits A-17 and A-39 both contain the definition of the word "specialist."  *See* Dkt. 27, Exs. A-17, A-39.  ACE contends dictionary evidence is not hearsay in trademark cases because it is not used to prove the truth of the matter asserted but is instead "provided to show the ordinary significance and meaning of words to the public (not the abstract truth of the definition)."  Dkt. 52.  The Fifth Circuit has observed that the dictionary definition is a good starting place for determining whether a phrase is generic, descriptive, suggestive, or arbitrary and fanciful, and definitions are "appropriate and relevant evidence," but they are not dispositive. *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.*, 909 F.2d 839, 847 (5th Cir. 1990).  The definitions, then, are not to prove the meaning of the word but to show how the public perceives the word.  The hearsay objections to the dictionary definitions relating to words contained within the alleged mark, which are contained at Exhibits A-17 and A-39, are OVERRULED.

2.  **Relevance.**  Jones also objects to the definitions at Exhibits A-17 and A-39 as irrelevant because the meaning of one part of the mark, "specialist," has little bearing on the meaning of the entire mark, "medical exercise specialist."  Dkt. 39.  ACE does not appear to rely on the definiton found at Exhibit A-39.  ACE uses Exhibit A-17 to support its contention that "ACE selected the term Medical Exercise Specialist instead of Medical Exercise Professional because the term 'specialist' in the healthcare field denotes a person who hold specialized training, specialized knowledge, skills and ability and can provide specialized services."  Dkt. 27.  Under 15 U.S.C. § 1115(b)(4), ACE must prove that it chose the term in good faith in order to make out its fair use defense.  The court

finds the definition of "specialist" is relevant for this purpose.  Jones's objections to the relevance

of Exhibits A-17 and E-39 are OVERRULED.

**D.     ACE Article Relating to Exercise for Medical Conditions (EXS. A-4 through A-7)**

Jones objects to Exhibits A-4 through A-7, which are articles and press releases relating to

ACE's programs and exercising to help with medical conditions, as hearsay.  Dkt. 39.  ACE responds

that the articles are offered to show non-trademark use of the words alleged to be a mark, not for the

truth of the articles.  Dkt. 52.  The only one of these articles cited in the motion is Exhibit A-6, which

ACE uses as a secondary exhibit to show that ACE launched its "Clinical Exercise Specialist"

certification in 1998.  Dkt. 27.  This launch is what the article is about, so it is being used for the

truth of the matter asserted.  Jones's objection to Exhibit A-6 is SUSTAINED.  Exhibits A-4, A-5,

and A-7 are all cited in the declaration of Todd Galati, ACE's Chief Science Officer.  *See* Ex. A-34.

Galati cites these exhibits to show that ACE used the phrase "Bridge the Gap."  *See id.*  Since this

is what the articles and press releases say, they are used for the truth of the matter asserted and are

hearsay.  Jones's objection is SUSTAINED.

**E.      Exhibit A-8**

Jones objects to Exhibit A-8 as hearsay.  Dkt. 39.  Exhibit A-8 is a breakdown of ACE's

Certified Medical Exercise Specialist manual.  *See* Dkt. 27, Ex. A-8.  ACE responds that the

breakdown is not being used for the truth of the matters asserted in the document but rather to show

"the exhibit's contents and the existence of the statements contained therein" and to "show ACE's

state of mind in selecting the mark."  Dkt. 52.  In the motion, ACE cites to this exhibit to show that

its "use of the phrase Medical Exercise Specialist is descriptive."  Dkt. 27 at 11.  The court agrees

that ACE is using this exhibit to show why it chose the term "Medical Exercise Specialist" and not

necessarily to prove what the document says.  Jones's objection is OVERRULED.

6

**F.**     **Exhibit A-9**

Jones objects to Exhibit A-9 as hearsay and asserts that it is irrelevant.  Dkt. 39.  Exhibit A-9 is a document showing that the ACE Certified Medical Exercise Specialist program, along with other programs, is an National Commission of Certifying Agencies ("NCCA") accredited program by the National Institute for Credentialing Excellence through October 31, 2018.  Dkt. 27, Ex. A-9.  ACE argues that the document is not offered for the truth of the matter asserted and is rather offered to "show what a consumer would find when searching the Internet, and the resulting impression consumers would thus have of ACE."  Dkt. 52.  As far as relevance, ACE argues that consumer perception of the generic certification names in the list is "highly probative of consumer perception in the instant case."  *Id.*  In the motion, ACE cites this exhibit to show that "it is extremely common to use highly descriptive titles and professional certification names that communicate the nature of the professional's training" in the fitness industry.  Dkt. 27 at 11.  The court agrees with ACE that this document is not hearsay because it is not being offered to show that the programs listed are certified.  The court also agrees that it is relevant.  Jones's objection to exhibit A-9 is OVERRULED.

**G.**     **Help Wanted Advertisements (Exs. A-10 through A-16)**

Jones objects to Exhibit A-10 through A-16, which are help wanted advertisements, as hearsay and argues that these documents are irrelevant because the dates of the advertisements are after the date that ACE allegedly began infringing on Jones's trademark.  Dkt. 39.  Jones contends they are irrelevant because they either do not use the entire phrase "medical exercise specialist" or because they are dated after the date ACE began infringing on Jones's trademark.  *Id.*  ACE cites these exhibits in its summary judgment brief to show that the "term specialist was a better descriptive term that is used extensively in the fitness marketplace on the Internet to identify someone with specialized skills."  Dkt. 27 at 11.  It additionally cites them to show that the terms

"Medical Exercise Specialist" and "Exercise Specialist" "are used extensively in the industry as a job title and job descriptor." Dkt. 27 at 8. With regard to hearsay, ACE argues that it is using these documents to show the non-trademark use of the words and to show what a consumer would find if he or she searched for the term on the Internet. Dkt. 52. The court agrees. These documents are not offered to show that these companies were hiring exercise specialists but to show the use of the phrase in the industry. Jones's hearsay objections to these exhibits are OVERRULED.

As to the dates, ACE contends that trademark rights are not static. *Id.* The court is not convinced that the fact that some of the exhibits are dated after ACE began using the term makes the community's perception of the term any less important to the trademark analysis, and the community's perception of the mark is highly relevant to the analysis. *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (A mark is protectable if it is "distinctive, either inherently or by achieving secondary meaning in the mind of the public.").

ACE additionally asserts that to the extent the listings are for portions of the phrase at issue ("Medical," "Exercise," "Specialist," and two-words combinations of these words) and not the entire phrase ("Medical Exercise Specialist"), they are still relevant because courts may separately analyze various individual words in a composite mark in reaching a conclusion about the overall impression the full mark is likely to have on consumers. Dkt. 52. The Fifth Circuit has instructed that courts should "not parse apart the constituent terms" of a mark when determining if it is descriptive. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 232 (5th Cir. 2009). However, the meaning of individual terms may be relevant for other parts of the trademark analysis. *See Primesource Bldg. Prods., Inc. v. The Hillman Grp., Inc.*, No. 3:14-cv-2521-B, 2015 WL 11121367, at *10 (N.D. Tex. Mar. 31, 2015) (noting that in considering the similarity of the marks, courts "must focus on the overall impression created by respective marks and may not dissect composite marks,"

8

but that "the Court may compare individual parts of a composite mark in reaching a conclusion about the overall impression that an infringing mark is likely to have on prospective customers."); *see also Xtreme Lashes*, 576 F.3d at 228 (noting, in analyzing mark similarity, that similarity "is determined on the basis of the total effect of the designation," but that "courts should give more attention to the dominant features of a mark."); *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938 (7th Cir. 1986) (noting that some terms "connote more than the sum of their parts and we must take care to decide the genericness of these terms by looking to the whole" and "[o]ther composite terms are nothing more than the sum of their parts," and concluding that "the principle that the validity of a mark is to be determined by looking at the mark as a whole [does not] precludes a court from examining the meanings of the component words in determining the meaning of the mark as a whole").

Jones's relevance objections to these exhibits are OVERRULED.

## H.     Documents Relating to Use of the Term "Medical Exercise" in the Industry (Exs. A-19, A-20, A-22, A-23, A-24)

Jones objects to Exhibits A-19, A-20, A-22, A-23, and A-24 as irrelevant and hearsay, and he also contends that ACE failed to authenticate these documents. Dkt. 39. The documents relate to what medical exercise and post-rehab training are (Ex. A-19), the practice of two medical exercise associates (Ex. A-20), what a prescription for medical exercise is used for (Ex. A-22), the hours and logistics of a medical exercise program at a hospital (Ex. A-23), and the motivation of medical exercise therapy (Ex. A-24). ACE uses these exhibits to show that the term "medical exercise" is "used extensively in the industry to identify a class or category of services." Dkt. 27. Thus, it does not offer these documents for the truth of the matter asserted. The hearsay objections are OVERRULED.

9

With regard to authentication, ACE argues that it has authenticated the documents pursuant to Federal Rule of Evidence 902(1), as these documents are portions of a US Patent and Trademark Office official file that ACE submitted as under the seal of the government agency.  The court agrees the documents are authenticated under Rule 902.  The objections to the authenticity are OVERRULED.

Finally, with regard to relevance, Jones contends the documents are not relevant because they only relate to "medical exercise" not the entire term "medical exercise specialist."  Dkt. 39. Additionally, Jones contends that Exhibit A-19 is not relevant because it is from Canada, not the United States.  *Id.*  ACE argues that all of these exhibits are relevant for the impression they create on the minds of consumers in the United States, and that the article that lists a Canadian mailing address has a United States URL, which is undoubtedly accessed by consumers in the United States. The court agrees that these documents are relevant with regard to the impression they create on U.S. consumers.  Additionally, the court is not concerned that the documents relate only to "medical exercise" and not "medical exercise specialist" for the reasons discussed above relating to the relevance of the help-wanted advertisements.  The relevance objections to these exhibits are OVERRULED.

## I.   Documents that Use the Entire Term (Exs. A-25, A-26, A-27)

Jones objects to Exhibits A-25, A-26, and A-27,which are Internet blogs, articles, and press releases that use the term "medical exercise specialist," as hearsay.  Dkt. 39.  ACE uses these documents to support its contention that the phrase "Medical Exercise Specialist" is used and defined on various third-party websites. Dkt. 27.  Additionally, Jones objects to Exhibit A-29, an ACE Role Delineation Report, as hearsay and hearsay within hearsay.  *Id.*  ACE uses this exhibit to support its contention that a consensus was reached during its study into an appropriate name for its program

10

that the term "Medical Exercise Specialist" best reflected the training.  *See* Dkt. 27.  ACE contends that none of these exhibits are offered for the truth of the matter asserted and instead are offered to show what a consumer would find when searching the Internet or, in the case of Exhibit A-29, to show ACE's state of mind in selecting the mark.  Dkt. 52.  The court agrees that the documents are not offered for the truth of the matter asserted.  The hearsay objections to these exhibits are OVERRULED.

As far as the double hearsay in Exhibit A-29, which is ACE's Role Delineation Report, the court agrees with ACE that it is offering the statements to show ACE's state of mind.  *See* Fed. R. Evid. 803(3).  However, the state-of-mind exception only applies to statements of the declarant, not statements of other parties contained within the declarant's statement.  *See id.*  Any statements of other individuals contained within Exhibit A-29 must be excluded because ACE has not shown that they fall within a hearsay exception, and "[h]earsay within hearsay" must be excluded unless "*each part* of the combined statements conforms with an exception to the rule."  Fed. R. Evid. 805 (emphasis added).  Therefore, Jones's hearsay within hearsay objection to Exhibit A-29 is SUSTAINED, and the court will not considered any hearsay within hearsay in this document.

## J.    Declarations

### 1.    Cedric Bryant (Ex. A-31)

Jones objects to paragraphs 4–10, 15, 17, 18, 20–24, 26, 31, 32, 33, 26, and 37 in the declaration of Cedric Bryant (Ex. 31).  The court will address these objections in categories.

**a.  Paragraphs 4 through 10.**  Jones objects to paragraphs 4 through 10 on the Bryant Declaration because Jones contends that Bryant has no personal knowledge of the statements contained in paragraphs 4 through 10 and Bryant is merely speculating because the statements relate to occurrences prior to Bryant's employment date at ACE in 2001.  Dkt. 39.  ACE asserts that

Bryant, who is ACE's Chief Science Officer, properly offers the statements in paragraphs 4 through 10 based on his review of ACE's business records. Dkt. 52. The court need not consider whether it is appropriate for Bryant to testify about the facts discussed in paragraphs 4 through 10 because the history of ACE set forth in those paragraphs in not relevant to the issues at hand.

> **b.  Paragraph 15.**  Jones objects to paragraph 15 of the Bryant Declaration because Jones claims the statement conflicts with ACE's website and marketing materials. Dkt. 39. Jones is free to argue that this information conflicts with other ACE materials in his response to ACE's motion for summary judgment. The objection to paragraph 15 is OVERRULED.

> **c.  Paragraphs 17, 18, 20-24, 26, 31, 32, 36, and 37.**  Jones objects to paragraphs 17, 18, 31, and 32 as improper expert opinions, conclusory statements, or speculative, paragraph 33 as a legal opinion, and paragraphs 20-24, 26, 36, and 37 as containing hearsay. Dkt. 39. The court need not consider the objections to paragraphs 17, 18, 22–24, 31–32, or 36–37 because ACE does not rely on these paragraphs in its motion for summary judgment.

Paragraph 20 discusses Bryant's job responsibilities at ACE, his familiarity with various fitness trainer programs, and it lists programs that contain the word "specialist" that are contained on a website about credentialing fitness professionals. Dkt. 28-7 ¶ 20. ACE relies on paragraph 20 to show that it is common to use descriptive titles to communicate the nature of one's professional training. Dt. 27. The court has already ruled that the website referred to in paragraph 20, which ACE offers as Exhibit A-9 to its motion for summary judgment, is not offered for the truth of the matter asserted.

Paragraph 21 discusses how professional certification program names address job opportunities and how extensively the term "specialist" is used, and it points to various exhibits that are attached to the motion for summary judgment as examples. Dkt. 28-7 ¶ 21. ACE refers to

paragraph 21 in its motion to show that the term "specialist" is a better descriptive term than other terms and is used extensively in the marketplace. *See* Dkt. 27. Like with the evidence discussed in paragraph 20, the court has already overruled the hearsay objection with regard to the specific documents to which Bryant refers in paragraph 21.

In paragraph 26, Bryant discusses how when ACE was using the name "ACE Clinical Exercise Specialist Certification Program," it received calls and email stating that the use of "clinical" was not appropriate and that ACE therefore initiated the Role Delineation Study, which led to the use of the term "Medical Exercise Specialist." Dkt. 28-7 ¶ 26. ACE relies on paragraph 26 to show that ACE "received feedback that the phrase Advanced Health and Fitness Specialist did not sufficiently communicate what the professional does . . . ." This information is not relied upon for the truth of the matter asserted; it is relied upon to show why ACE changed the name of the certification. The hearsay objections to these paragraphs are OVERRULED.

### 2.   Todd B. Galati (Ex. A-34)

Jones objects to paragraphs 5, 6, and 7 in the declaration of Todd B. Galati. Dkt. 39. Jones contends that paragraph 5 offers an improper expert opinion and the end of the paragraph is vague and ambiguous, paragraph 6 is speculative, and paragraph 7 is hearsay. Dkt. 39. ACE cites to paragraph 7 in its motion for summary judgment to support its contention that ACE launched its clinical exercise specialist certification in 1998, but it also offers deposition support for this contention. *See* Dkt. 27 at 10. Galati's declaration is not cited in any other places in ACE's motion for summary judgment. The court, therefore, finds it unnecessary to rule on these objections at this point.

### 3.   James Sarnecky (Ex. A-40)

Jones, without identifying specific paragraphs, objects to the declaration of James Sarnecky

13

as being an improper expert opinion and legal conclusion.  Dkt. 39.  He specifically takes issue with Sarnecky's assertion that Jones's authorizations to use his mark were "naked" and "did not have quality control provisions."  *Id.*  ACE contends these are merely factual observations.  Dkt. 52.  The court agrees with Jones that the observations contained in the second-to-the-last sentence of paragraph 4 of the Sarnecky Declaration are legal conclusions and inadmissible.  The objection to this sentence is SUSTAINED.  To the extent Jones objects to other aspects of the declaration, those objections are OVERRULED.

### 4.    Marc L. Pinckney (Ex. A-41)

Jones objects to the declaration of Marc L. Pinckney as an improper expert opinion and legal conclusion.  Dkt. 39.  He states that he specifically objects to Pinckney's observations that Jones's authorizations to use his mark were "naked" and "did not have quality control provisions." *Id.* However, it was Sarnecky, not Pinckney, who made these observations.  The objection is thus OVERRULED.

### 5.    Angelique Riordan (Ex. A-42)

Jones objects to the declaration of Angelique Riordan for many reasons.  Dkt. 39.  He asserts that Riordan has no personal knowledge of the items listed in paragraphs 5–18 and 20–28 of the declaration and that the items attached as exhibits that are discussed in these paragraphs are hearsay.  Dkt. 39.  Jones also objects that the date these items were accessed or obtained is not listed.  *Id.*  He objects that the following items that were attached to the declaration are not authenticated: Exhibits A-2 through A-7, A-9 through A-18, A-21, A-25 through A-30, A-35, and A-39.  *Id.*

ACE argues that the items attached are printouts of websites and are not hearsay because they are not offered for the truth of the matter asserted.  Dkt. 52.  ACE claims that there is no basis to claim Riordan does not have personal knowledge of the items in paragraphs 5–18 and 20–28, which

merely state that various exhibits attached to the motion for summary judgment are true and correct copies of certain websites with the URL of those websites listed.  *Id.*  ACE also notes that Riordan's testimony that the printouts are what she claims them to be is sufficient to authenticate them and that the printouts themselves contain footers with the url listed.  *Id.*

The court agrees with ACE.  Riordan states in paragraph 2 of her declaration that she is "familiar with the facts and circumstances stated herein based on [her] person[al] knowledge" and that if she were called as a witness she "could and would testify compentently to such facts under oath."  Dkt. 27, Ex. A-42.  She additionally states that she has "personally reviewed and [is] familiar with the information referenced" in the declaration.  *Id.*  The court finds her statements as well as the inclusion of the URLs sufficient.  Jones's objections to Riordan's declaration are OVERRULED.

### 6.    Tasha L. McDonald (Ex. A-52)

ACE filed the declaration of Tasha L. McDonald, a paralegal employed by ACE's counsel's firm, with its reply brief.  *See* Dkt. 44, Ex. 52.  Jones objects to paragraphs 3, 5:1, 5, 6–12, 14, 15, and Ex. A-108, which paragraph 14 of the McDonald Declaration seeks to authenticate.  Dkt. 49.

**a. Paragraph 3.**  Jones contends that paragraph 3, which discusses the International Trademark Association ("ITA"), notes that a true and correct copy of the ITA's most recent trademark guide is attached as Exhibit A-53, and provides an excerpt from this guide, is hearsay and irrelevant because the paragraph does not describe the law of the Fifth Circuit and contains improper opinion testimony and legal conclusions.  Dkt. 49.  ACE argues that paragraph 3 is merely an authentication of the booklet based on the declarant's knowledge and the fact that she downloaded the booklet from the Internet.  Dkt. 55.  The court believes that McDonald's authentication of the exhibit is appropriate.  As far as whether the booklet itself is hearsay or improper evidence, the court will address this issue when addressing Jones's objection specific to the exhibit.

15

**b. Paragraph 5.** Jones objects to the first sentence of paragraph 5 as hearsay along with a slew of other objections because McDonald states that she was "informed" that Jones made an admission regarding the phrase "medical exercise." Dkt. 49. The court agrees this is hearsay and irrelevant. Jones's objection to this statement is SUSTAINED and the court will not consider it.

Jones objects to the remainder of paragraph 5 because it purports to describe the contents of applications or registrations, which Jones contends violates Federal Rule of Evidence 1002, is irrelevant, an improper legal conclusion, and hearsay. Dkt. 39. Paragraph 5 discusses a search McDonald did of USPTO records for registrations of the term "specialist" that disclaimed rights to that term. Dkt. 44, Ex. A-52 ¶ 5. ACE asserts that Jones admitted in his deposition that the phrase "medical exercise" is generic because he agrees that anyone can use it. Dkt. 55. It claims that the general protectability of phrases containing the term is highly relevant as it weighs on whether the term specialist is generic or merely descriptive. *Id.* ACE asserts that trademark registrations are plainly admissible under 25 U.S.C. § 1057(b).

The court finds that the procedure McDonald used to do the search and the outcome are admissible. However, any commentary about what other people told her is inadmissible, such as her comment that she included cancelled registrations because she was informed about the legal meaning of these cancellations, is hearsay and inadmissible. ACE's attorneys may argue about the legal meaning of the data in their briefing. It is not a proper topic for a declaration. Jones's objections to paragraph 5 are thus SUSTAINED IN PART and OVERRULED IN PART. The court will not consider the hearsay contained within this paragraph.

**c. Paragraphs 6–12.** Jones next objects to paragraphs 6-12 of McDonald's declaration as lacking foundation and offering improper opinion testimony, as irrelevant, and as violating Federal Rule of Evidence 1002 because the McDonald discusses an Internet search she

16

performed but does not include a printout of the results.  Dkt. 49.  Jones has offered Robert Esquerre as an expert in branding in the fitness industry.  Dkt. 55.  In paragraph 6 of her declaration, McDonald notes that she conducted searches of the businesses Esquerre referred to in paragraphs 7 and 9 of his expert report, and then paragraphs 7 though 12 of McDonald's declaration report the outcome of those searches.  *See* Dkt. 44, Ex. 52 ¶¶ 6–12.  ACE notes that McDonald does not opine at all, she merely states the nature and results of her government record search.  Dkt. 55.  ACE argues that if Esquerre is proffered as an expert, the success or lack of success he has had in obtaining trademark registrations in the fitness industry is relevant.  *Id.*  The court agrees that the evidence is relevant, is not improper opinion evidence, and, while perhaps not the best evidence, it is sufficient for summary judgment and *Daubert* purposes.  Jones has offered no evidence or argument that McDonald's results are incorrect or unreliable, and there is no reason to suspect that ACE will not be able to offer the best evidence at trial.  Jones's objections are OVERRULED.

      **d.**  **Paragraph 14 and Exhibit A-108.**  Jones next objects to paragraph 14 of McDonald's declaration and Ex. A-108, both of which he claims are irrelevant.  Dkt. 49.  Paragraph 14 reports that McDonald searched the records of the Ohio Secretary of State for corporate names containing the phrase "medical exercise specialist."  Dkt. 44, Ex. A-52 ¶ 14.  It additionally notes that Exhibit A-108 to the motion for summary judgment is a true and correct copy of the result of that search.  *Id.*  Jones asserts that one of the corporate names containing the phrase that was found in the search, Cincinnati Medical Exercise Specialists, Ltd., is run by one of his customers, and that customer uses the mark with Jones's permission.  Dkt. 49.  ACE argues that Jones does not state that he granted a license to Cincinnati Medical Exercise Specialists, Ltd. so that it could use the term and argues that the search results are relevant to ACE's naked licensing argument.  Dkt. 55.  ACE asserts that the company's use of the phrase undermines Jones's argument that it is a valid mark and that

the submission of this company's name is thus highly relevant. *Id.* ACE provides authority for its legal argument that if a mark owner does not exercise control over licensees' use of its mark, then the owner may be estopped from challenging the use of the mark. *Id.* (citing *Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 124 (5th Cir. 1973)). The court finds the evidence relevant. Jones's objection is OVERRULED.

      **e. Paragraph 15.** Jones objects to paragraph 15 of McDonald's declaration, to the extent the documents discussed in the paragraph are purportedly incorporated into the testimony, as hearsay, improper opinions, improper legal conclusions, lacking foundation, and irrelevant, and he asserts an objection under Rule 1002. Dkt. 49. In paragraph 15, McDonald states that Exhibits A-109 through A-113 are true and correct copies of articles she downloaded from websites relating to whether the term "trademark" is the equivalent of the term "brand." Dkt. 44, Ex. 52 ¶ 15. McDonald states that the articles explain "that 'trademark' is not the equivalent of 'brand' but that trademarks are but one part of branding." *Id.* ACE contends that the evidence shows that in the fitness industry, trademark is not equivalent to brand but is just one part of branding. Dkt. 55. ACE contends that this is not a legal conclusion and that McDonald is merely reporting what the websites say. *Id.* ACE argues that the articles are not hearsay because they are offered to show public perceptions of how branding is done in the fitness industry. *Id.* ACE additionally argues that the articles are relevant to counter arguments made by Jones's expert that the classic model for branding is not used by the fitness industry. *Id.* As far as Rule 1002, which is the Best Evidence Rule, ACE argues that the website printouts are the best evidence of what is on the Internet and the declaration authenticates the printouts. *Id.* The court agrees with ACE. Jones's objections to this paragraph and the exhibits it authenticates are OVERRULED.

### 7.      Graham Melstrand, Paragraph 33 (Ex. 3 to Dkt. 37)

Jones objects to paragraph 33 of the declaration of Graham Melstrand, which was filed as an exhibit to ACE's opposition to Jones's motion for a preliminary injunction.  Dkt. 49.  Jones asserts that he is making his objection at this point to "avoid unnecessary filings."  Dkt 49 at 4 n.2. ACE argues that Jones has waived his objection to this exhibit because he did not raise it in his reply to ACE's opposition to the motion for the preliminary injunction.  Dkt. 55.  The court agrees.  The objection to paragraph 33 of the Melstrand Declaration, which was filed in support of ACE's opposition to the preliminary injunction and not filed to support ACE's motion for summary judgment, is OVERRULED.

### I.      Trademark Service Mark Application (Ex. A-35)

Jones objects to Exhibit A-35, which is the trademark service mark application for the mark "Medical Exercise Associates," as irrelevant and misleading under Federal Rules of Evidence 402[3] and 403[4] because the application was for a different mark and is merely an initial office action by the USPTO that was eventually abandoned.  Dkt. 39.  He also objects to the exhibit because it contains hearsay and hearsay within hearsay.  *Id.*  ACE argues that the exhibit is relevant to understanding the lack of distinctiveness of the mark "Medical Exercise Specialist" and that any hearsay within the document is not used for the truth of the matter asserted but to show the ordinary significance and meaning of the words to the public.  Dkt. 52.  The court agrees with ACE.  This is the summary judgment stage, not trial, and Jones can correct any misleading aspect of the exhibit

---

[3] Rule 402 indicates that relevant evidence is generally admissible and irrelevant evidence is not.  Fed. R. Evid. 402.

[4] Rule 403 allows courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

in his response to the motion for summary judgment.  However, the court will not consider any

hearsay within hearsay if ACE relies on any hearsay within hearsay in its motion.  The hearsay

within hearsay objection is thus SUSTAINED.  The objections are otherwise OVERRULED.

**J.      ACE's Requests for Production (Ex. A-36)**

Jones objects to Exhibit 36, which is a portion of ACE's requests for production, because it

does not include Jones's objections or responses.  Dkt. 39.  ACE argues that the requests are offered

to show the content of the requests, not Jones's responses, and that Jones is free to offer his

responses with his response to the motion for summary judgment.  Dkt. 52.  The court agrees.

Jones's objection to Exhibit 36 is OVERRULED.

**K.      Guide Published by the International Trademark Association (Ex. A-53)**

Exhibit A-53 is a booklet entitled "A Guide to Proper Trademark Use" published by the ITA.

Dkt. 44, Ex. A-53.  Jones objects to this exhibit as irrelevant because it does not describe the law of

the United States, contains hearsay, contains conclusory statements and improper opinions, and

offers improper legal conclusions.  Dkt. 49.  The court agrees with Jones to some extent.  This is

perhaps the type of evidence an expert may rely upon, but it is hearsay and not admissible on its own.

Jones's objection to this exhibit is SUSTAINED.

**L.      Patent Registrations for Marks Containing the Term "Specialist" (Exs. A-55**

**through A-107)**

Jones objects to Exhibits A-55 through A-107 because (1) ACE produced and filed them for

the first time with its reply even though the exhibits relate to issues raised by ACE in its motion; and

(2) they are irrelevant.  Dkt. 49.  These Exhibits are all printouts of USPTO registration documents

relating to marks containing the term "specialist."  *See* Dkt. 44, Exs. A-55–A-107.  Jones points out

that the documents do not show specific facts and issues underlying the USPTO's decision with

regard to these registrations.  Dkt. 49.  ACE argues that it offered these documents with its reply because Jones's opposition to ACE's motion for summary judgment argues that even if the words standing alone may be generic and not protectable by trademark, combining them yields a protectable mark.  Dkt. 55.  ACE also contends that the exhibits rebut testimony by Esquerre.  *Id.*  The court finds that the exhibits are relevant and that ACE submitted them in rebuttal to Jones's response. Jones's objections are OVERRULED.

**M.     Branding Versus Trademark Documents (Exs. A-109 through A-113)**

Jones objects to Exhibits A-109 through A-113, which all relate to branding versus trademarks, because they are new exhibits filed for the first time on reply and because they contain hearsay, lack foundation, contain improper opinion testimony, and contain improper legal conclusions.  Dkt. 49.  As far as the contention that ACE should have filed these exhibits with its original motion, ACE argues that the exhibits were filed with the reply to respond to Jones's assertion in his response to the motion for summary judgment that "ACE's own documents confirm that it is using 'Medical Exercise Specialist' as a brand" and "intended the name to be a brand." Dkt. 55 at 12.  ACE further notes that it needed these documents to refute Esquerre's report, which Jones provided to support his opposition to the motion for summary judgment, as Esquerre opines that ACE is using the term "Medical Exercise Specialist" as a brand to identify its programs.  *Id.* at 13.   The objection that ACE should have filed these exhibits with its original motion is OVERRULED.  The other objections are all OVERRULED for the same reasons the objections to paragraph 15 of the McDonald Declaration was overruled.

**N.     Godfrey Deposition Excerpt (Ex. A-115)**

Jones objects to Exhibit A-115, which is an excerpt from the deposition of Phillip Godfrey, because it lacks foundation and contains an improper legal conclusion because Godfrey did not

establish that he has the requisite knowledge to testify about what entitles a person to exclusive rights. Dkt. 49.  ACE notes that Jones listed Godfrey as a potential witness in his initial disclosures and identified Godfrey as a member of Jones's executive board.  Dkt. 55.  Godfrey admits in the deposition transcript excerpts that the title "Medical Exercise Specialist" and the word "specialist" are not terms to which Jones may claim an exclusive right.  Dkt. 44-64 (Ex. A-115).  ACE argues that Godfrey's understanding is not an improper legal conclusion but merely Godfrey's factual understanding as a fitness industry professional.  Dkt. 55.  ACE notes that Jones did not object to foundation at the deposition, so that objection is waived.  *Id.*

The court agrees that Jones has waived his objection to foundation.  However, the court does believe that whether Jones may claim an exclusive right to the term "Medical Exercise Specialist" is a legal conclusion that the court, not Godfrey, must make.  Accordingly, Jones's objection to this excerpt on the grounds it is an improper legal conclusion is SUSTAINED.

### III.  MOTION TO EXCLUDE ESQUERRE

Jones offers Robert Esquerre as a rebuttal expert to ACE's branding expert Erich Joachimsthaler. Dkt. 53.  Esquerre is offered as an expert in the fitness industry.  *See id.*  Esquerre has various certifications and is a business planner, educator, and personal trainer.  *Id.*  ACE moves to exclude the testimony of Esquerre, contending that Esquerre is unqualified, biased, and not a trademark expert.[5]  Dkt. 46.

### A.    Legal Standard

The Supreme Court of the United States acknowledged in *Daubert v. Merrell Dow Pharmaceuticals* that Federal Rule of Evidence 702 serves as the proper standard for determining

---

[5]  ACE also moves for an oral hearing on its motion to exclude Esquerre's testimony. Dkt. 47.  The court finds that an oral hearing in not necessary.  The motion for an oral hearing is DENIED.

the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597–98, 113

S. Ct. 2786 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary

assessment of whether the reasoning or methodology properly can be applied to the facts in issue."

*Daubert*, 509 U.S. at 592–93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct.

1167 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (5th Cir. 2002). *Daubert* and its

principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147.

Experts need not be highly qualified to testify, and differences in expertise go to the weight of the

testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

Nonetheless, courts need not admit testimony that is based purely on the *ipse dixit* of the expert.

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997); *Moore v. Ashland Chem. Inc.*,

151 F.3d 269, 276 (5th Cir. 1998).

     In addition to being qualified, an expert's methodology for developing the basis of his or her

opinion must be reliable. *Daubert*, 509 U.S. at 592–93; *Moore*, 151 F.3d at 276. "The expert's

assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore*,

151 F.3d at 276. Even if the expert is qualified and the basis of her opinion is reliable, the

underlying methodology must have also been correctly applied to the case's particular facts in order

for her testimony to be relevant.  *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007).  The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible.  *See* Fed. R. Evid. 104(a); *Moore*, 151 F.3d at 276.  The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

**B.    Analysis**

ACE argues that Esquerre's testimony does not meet the standard for admissibility under Rule 702 because (1) he is not qualified and does not use reliable principles and methods for his opinions regarding the trademark issues; (2) his conclusion regarding how others view the mark is not based on sufficient facts and data; and (3) Esquerre's specialized knowledge all relates to being a personal trainer and is not helpful in understanding the present trademark issues.  Dkt. 46.

**1.    Qualification**

Jones points out that Esquerre graduated in 1971 with a Master's Degree in Business and Exercise Science from City University in New York.  Dkt. 53 & Ex. 1.  Jones contends that Esquerre mastered the fundamentals of marketing, branding, and brand development while earning his degree. Dkt. 53.  Jones notes that Esquerre started his career working in marketing and brand development with Fortune 100 and Fortune 500 companies but then moved to the fitness industry, where he started as a master personal trainer and proceeded through the ranks of Fitness Director and finally Executive Director of Equinox Training Institute.  *Id.*  Esquerre eventually launched his own consulting business aimed at assisting fitness businesses in developing and reinforcing their brands. *Id.* (citing Ex. 1 ¶ 8).  He has consulted for "dozens of fitness businesses," including ACE.  *Id.* According to Jones, "Esquerre had interacted with thousands of fitness professionals, developed

multiple branding strategies in the fitness industry, surveyed the market for advanced courses and certifications, and consulted for the organizations that sell advanced courses and certifications." *Id.* (citing Ex. 3 ¶ 8).

ACE contends that Esquerre is not qualified because he provides no indication that he knows the definition of trademark, how trademark rights are acquired, or how they are classified. Dkt. 46. ACE thus takes issue with allowing Esquerre to testify about how strong of a brand the term "Medical Exercise Specialist" is. *Id.* Jones points out, however, that ACE itself listed Esquerre as one of its subject matter experts and noted that Esquerre was "internationally recognized" and is a "branding specialist." Dkt. 53. Jones notes that Esquerre has "served as a faculty member for almost every major fitness organization, published books that covered branding for fitness businesses and professionals, and lectured at conferences across the United States." *Id.* (citation omitted). The court finds that Esquerre is qualified to testify about branding in the fitness industry. However, he will not be allowed to draw legal conclusions as to whether the alleged brand meets various legal definitions related to trademark law.

### 2.    Based on Sufficient Facts or Data

Next, ACE contends that Esquerre's conclusions regarding the term "Medical Exercise Specialist" being a "strong brand" and "not a generic term" should be stricken because they are "entirely speculative and merely the unsupported subjective belief of Esquerre without any apparent knowledge that he is referred to a legal term of art." Dkt. 46. ACE argues that Esquerre did not conduct a survey and "Esquerre cannot reliably demonstrate that the alleged mark is a 'strong brand' and 'not a generic term'" without competent survey evidence. *Id.* ACE additionally contends that Esquerre cannot reliably demonstrate how the alleged mark is perceived absent survey results. *Id.* ACE argues that Esquerre's opinions about the mark are "just personal unscientific opinion[s]

without empirical data and without any reliable or repeatable branding theory or model, scientific or otherwise." *Id.* ACE additionally takes issue with Esquerre's opinion that the mark is "inherently distinctive" without any basis to make this legal conclusion. *Id.* As noted above, the court agrees that Esquerre may not draw any legal conclusions about the mark, including whether it is "inherently distinctive" or "generic."

### C.      Reliable Principles or Methods

As far as the reliability of Esquerre's methods for determining the strength of the mark, Jones agrees that Esquerre did not conduct a survey, but asserts that a survey is not the only method for determining how strong a brand is. Dkt. 53. Jones asserts that Esquerre's method included (1) evaluating the background of the fitness industry and relevant players; (2) analyzing whether the course and certification were 'basic' or 'advanced'; (3) explaining the role of a "value proposition" in the context of developing a brand in the fitness industry; (4) considering whether the certification was advanced and the implications of an advanced certification; and (5) considering other indications that a name identifies a particular business as a source of goods and services. *Id.* In reaching his conclusions, Esquerre considered ACE's branding expert's reports, various declarations in this case, Jones's advertising materials, and emails and communications from Jones's customers and potential customers. Dkt. 54-1. Jones argues that a survey is unnecessary to establish Esquerre's expertise given his experience in the industry. Dkt. 53. (relying on *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866, 907 & n.40 (S.D. Ind. 2014) and *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, No. CV-14-085-LRS, 2015 WL 11117171, at *4 (E.D. Wash. Nov. 30, 2015)).

In *Heckler & Koch, Inc.*, the federal district court in the Southern District of Indiana noted that "an unregistered trade dress must possess a secondary meaning" to qualify as "distinctive."

71 F. Supp. 3d at 920.  This "secondary meaning" occurs when "'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'"  *Id.* (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210–15, 120 S. Ct. 1339 (2000)).  The court noted that "[p]roof of secondary meaning can be established through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying."  *Id.*  In *Heckler*, the plaintiffs presented evidence of intentional copying, the extensive presence of the product in trade shows, adverting indicating the product was the "world's most recognizable" of its type, sales data, and longevity of the product's use.  *Id.* at 921.

In *OTR Wheel Engineering, Inc.*, the federal district court in the Eastern District of Washington discussed the type of evidence needed to show that the trade dress in that case was "inherently distinctive" and had acquired "secondary meaning" such that the public associated the trade dress with the product.  *OTR Wheel Eng'g*, 2015 WL 11117171, at *4.  The court noted that "[d]irect evidence—consumer testimony and surveys—is not the only way to establish secondary meaning," as "indirect evidence such as exclusivity, manner and length of use of a mark, amount and manner of advertising, amount of sales and number of customers, and proof of intentional copying, can also be used to establish secondary meaning."  *Id.*  The main evidence relied upon by the *OTR Wheel Engineering* expert at issue was evidence of copying and customer confusion.  *Id.* at *5.

These cases demonstrate that a survey is not necessarily required, but the expert's methodology for determining the strength of the brand must consist of more than simply considering what the expert knows about the mark.  Here, Esquerre considered ACE's expert's report, Jones's customer emails and communication, advertising materials, and declarations in this case, and the type, price, and content of Jones's Medical Exercise Specialist class, and then reached a conclusion

27

based on this evidence and his thirty-years of expertise in working with brands in the fitness industry. The court finds that this methodology is sufficiently reliable to allow Esquerre to testify in this case. *Cf. Huss v. Gayden*, 571 F.3d 442, 455 (5th Cir. 2009) (finding that a rebuttal witness's "education and training allowed him to form a reliable opinion" about causation and why the opposing party's expert did not prove causation).

### D.    Reliable Application of Principles or Methods to Facts

Next, ACE contends that Esquerre does not reliably apply principles and methods in formulating his opinion that Erich Joachimsthaler (ACE's expert) is wrong. Dkt. 46.  It points out that Esquerre incorrectly stated that Joachimsthaler did not consider Jones's exclusive use of the term "Medical Exercise Specialist" for more than twenty years when, in fact, Joachimsthaler *did* note that Jones had been in business for the last twenty-two years.  *Id.* (citing Dkt. 28-19 at 4 (Joachimsthaler Rep.)).  Esquerre also, according to ACE, made the following errors: (1) stating that Joachimsthaler failed to consider critical evidence when his report explicitly states that he considered all of the exhibits from the preliminary injunction motion; (2) asserting that Joachimsthaler failed to understand the value proposition of specialty courses and certifications when in fact higher value propositions do not equate to a trademark; (3) determining that Jones has built a strong brand in the name "Medical Exercise Specialist" based on his large number of sales when the sales have to be in connection with building a trademark not using a generic term, as there are often large a large number of sales of products under trademarks adjudicated to be generic (like aspirin); (4) relying on fitness professionals as the relevant consumers and not applying any methodology in reaching this conclusion; and (5) asserting that Joachimsthaler's report applies only to the "real" world and not the fitness industry when clearly the fitness industry is part of the real world.  *Id.*  All of these

contentions are issues that can be dealt with during cross examination and are not sufficient reasons to completely exclude Esquerre's testimony.

Finally, ACE contends that Esquerre's testimony is not based on sufficient facts and data and that Esquerre is openly biased against ACE. Dkt. 46. ACE claims Esquerre is biased primarily because he is not charging Jones for his services. *Id.* In his report, Esquerre stated that he is working free of charge because he "objectively looked at ACE's conduct in utilizing a brand name that ACE knew had been developed and utilized by Dr. Jones . . . long before ACE had opted to take it as [its] own" and he saw "ACE's action as the 'Goliath' trying to push 'David' around." Dkt. 54-1. ACE argues that Esquerre has an "axe to grind" with ACE and his testimony therefore has "no probative value" and should be excluded under Rule 403. Dkt. 46.

Jones contends that Esquerre "analyzed Dr. Jones's customers and their relevant traits, evaluated Dr. Jones's use of 'Medical Exercise Specialist' in light of these traits, and examined other factors to show 'Medical Exercise Specialist' is a name that identifies and distinguishes Dr. Jones as the source of course training, materials and certification." Dkt. 53. Jones additionally points out that (1) personal attacks of "bias" have no place in a *Daubert* analysis; and (2) while Esquerre is working for free, he is doing so because he "actually believes his opinions are true," not because he is biased. Dkt. 53. The court finds that Esquerre's opinions are based on sufficient facts and that ACE has not shown that Esquerre is biased simply because he is working for free in an effort to help who he perceives to be the "little guy." ACE is free to examine any potential bias during cross examination.

ACE's motion to exclude Esquerre's testimony is GRANTED IN PART AND DENIED IN PART. It is GRANTED in that Esquerre may not testify as to any legal conclusions. It is otherwise DENIED.

## IV.  LEGAL STANDARD FOR THE SUMMARY JUDGMENT MOTION

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Envtl. Conservation Org. v. City of Dall., Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

## V.  ANALYSIS: SUMMARY JUDGMENT MOTION

Jones asserts claims of direct and contributory trademark infringement and unfair competition under the Lanham Act and unfair competition under Texas common law.  Dkt. 5.  ACE seeks summary judgment in its favor on its fair use defense, its claim that the trademark is invalid because it was used as both a certification mark and a trademark, and its naked licensing defense.  The court will first discuss trademark law generally and then consider ACE's three grounds for summary judgment *in seriatim*.

### A.  Trademarks

"Trademarks are words, designs, or other devices, which are affixed to goods or used in connection with services to denominate such goods or services as well as to distinguish them from the goods or services of others."  3 Business Torts, Ch. No. 28, Trademarks, § 28.01[1] (Matthew Bender, Rev. Ed. 2016).  Under 15 U.S.C. § 1125(a),

> Any person who, on or in connection with goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

To prevail on a claim of trademark infringement under the Lanham Act, Jones must show: (1) he possesses a legally protectable mark; and (2) ACE's use of his trademark creates a likelihood of confusion as to source, affiliation, or sponsorship. *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998). A mark is protectable if it is "distinctive, either inherently or by achieving secondary meaning in the mind of the public." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d at 329. "Marks are often classified in categories of generally increasing distinctiveness; . . . they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753 (1992). "A mark need not be registered in order to obtain protection because '[o]wnership of trademarks is established by use, not by registration.'" *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008) (quoting *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin*, 909 F.2d 839, 842 (5th Cir. 1990)). "The protectability of unregistered marks is governed by the same

31

principles that qualify a mark for registration under the Lanham Act. *Id.* The term "Medical Exercise Specialist" is not a registered trademark.

> In determining whether a likelihood of confusion exists, [courts in the Fifth Circuit] consider[] the following non-exhaustive list of factors: (1) the type of trademark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion.

*Id.* at 194. "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be support by even a majority of the seven factors." *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985). "As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Bos. Prof'l Hockey Assoc., Inc. v. Dall. Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975); *see also* 3 Business Torts, Ch. No. 28, Trademarks, § 28.03[5] ("While federal trademark law does not control cases involving a common law claim, courts often look to the Lanham Act in resolving common law trademark cases.").

## B.    Fair Use Defense

ACE argues that it cannot be held liable for trademark infringement because it does not use the term "Medical Exercise Specialist" as a mark and is using it fairly to describe the type of program it offers. Dkt. 27. It contends that "Medical Exercise Specialist" is the most descriptive term of the job role for somebody who specializes in medical exercise, and that its use of the term should be deemed "fair use." *Id.*

The Lanham Act provides a statutory "fair use" defense whereby use of a mark is permissible and not a violation if the use is "otherwise than as a mark . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their

geographic origin[.]" 15 U.S.C. § 1115(b)(4).   "The 'fair-use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir.1980).   The defense is also available with respect to federal and state unfair competition claims.   *See id.* at 1190.

To make out the statutory fair use defense, ACE must show that it made use of the term "Medical Exercise Specialist" "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000); *see Soweco, Inc.*, 617 F.2d at 1185 (noting that the "fair-use" defense described in 15 U.S.C. § 1115(b)(4) "is available only when the allegedly infringing term is used not as a trademark but 'fairly and in good faith only to describe to users the goods and services of [a] party, or their geographic origin.'" (quoting 15 U.S.C. § 1115(b)(4)).   The defendant does not have an "independent burden to negate the likelihood of any confusion in raising the affirmative defense that a term is used descriptively, not as a mark, fairly, and in good faith." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 124, 125 S. Ct. 542 (2004).

ACE argues that the court should grant summary judgment in its favor on this affirmative defense because (1) the title "ACE Medical Exercise Specialist Certification Program" merely describes its program; (2) ACE always uses its "ACE" trademark next to or nearby the descriptive words "Medical Exercise Specialist"; (3) ACE uses the same font for the surrounding words that it uses for the term "Medical Exercise Specialist"; (4) the term "Medical Exercise Specialist" truthfully describes a specialization in medical exercise; and (5) ACE uses the term in good faith as it did not know that Jones claimed a trademark.   Dkt. 27 at 19–20.   ACE contends that it is merely using a

common phrase to describe a specialization in medical exercise and that no reasonable jury could find bad faith. *Id.* at 20–21.

Jones argues that ACE is using the term "Medical Exercise Specialist" as a mark because it uses capital letters for the phrase and prominently features the name. Dkt. 37. Jones also argues that the term is suggestive, not descriptive, and that the fair use defense does not apply to suggestive terms. *Id.* Additionally, Jones argues that ACE cannot establish good faith as a matter of law and cannot show that it uses the term in a purely descriptive sense. *Id.* The court will first consider whether ACE uses the term as a mark, then whether it is used in the descriptive sense.

1. Use as a Mark

Jones argues that ACE uses the term "Medical Exercise Specialist" as a mark because ACE features the term prominently. Dkt. 37. ACE argues that it does not use the term as a mark and only uses it to describe its program. Dkt. 27. ACE relies primarily on *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786 (5th Cir. 1983), *abrogated in part by KP Permanent Make-Up, Inc.*, 543 U.S. 111 (ruling that there is no need to prove that customers are not confused to make out a fair use defense); and *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 424–28 (S.D.N.Y. 2008).[6]

In *Zatarains, Inc.*, Zatarain's, Inc. held a trademark on the term "Fish-Fri," which it used as a mark on a product used as a batter for fried fish. 698 F.2d at 788. The two defendants began marketing separate products that they called "fish fry," and Zatarain's sued for trademark infringement. *Id.* at 788. The district court held the defendants had established a fair use defense,

---

[6] ACE also relies on *King Ranch, Inc. v. D.R. Horton, Inc.*, 2012 WL 1788178 (S.D. Tex. May 16, 2012) (Miller, J.). However, in *King Ranch*, this court found that a developer who named its subdivision in Thornton, Colorado "King Ranch Estates" was using the trademark owned by King Ranch, Inc. and King Ranch IP, LLC in Texas fairly because "King Ranch" merely identified the location of the homes as the area in which the subdivision was located had been known as "King Ranch" for generations. 2012 WL 1788178, at *7–8. There is no geographical argument for ACE's fair use defense, and the court therefore finds that *King Ranch* is not on point.

and the Fifth Circuit affirmed.  *Id.* at 791.  The Fifth Circuit noted that Zatarain's term "fish-fri" was "a descriptive term that ha[d] acquired a secondary meaning in the New Orleans area" but that Zatarain's had "no legal claim to an exclusive right in the original, descriptive sense of the term." *Id.* at 796.  It determined that the defendants were "still free to use the words 'fish fry' in their ordinary, descriptive sense."  *Id.*  The court noted that the defendants' use of the term was fair and in good faith as "[t]estimony at trial indicated that the appellees did not intend to use the term in a trademark sense," they "apparently believed 'fish fry' was a generic name for the type of coating mix they manufactured," and they "consciously packaged and labelled their products in such a way as to minimize any potential confusion in the minds of consumers."  *Id.*

In *Dessert Beauty, Inc.*, the federal district court in the Southern District of New York considered whether the words "love potion," which were registered as a trademark for perfumed essential oils by the defendant and third-party plaintiff, were fairly used by the plaintiff Dessert Beauty, Inc., in its products described as "love potion fragrance" and "belly button love potion fragrance."  568 F. Supp. 2d at 419.  Dessert Beauty sought a declaratory judgment that it did not infringe on the trademark and sought to cancel the trademark as generic.  *Id.*  The court determined that Dessert Beauty did not use the term "love potion" as a trademark because it did not identify its products by that term.  *Id.* at 424.  Rather, it used its trademark, "DESSERT," in conjunction with the catch phrase "Sexy Girls Have Dessert" on all of its products, and "[w]ords on a product's packaging generally do not serve as a trademark where there is also a conspicuously visible trademark that clearly serves that function."  *Id.* (relying on *Cosmetically Sealed Indus., Inc. v. Chesebrough-Ponds's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) ("The non-trademark use of the challenged phrase and the defendants' good faith are both evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own

trademarks."). Additionally, the court noted that Dessert Beauty "used the words 'love potion' within the phrases 'Love Potion Fragrance' or "Belly Button Love Potion Fragrance' to identify particular products in the [Dessert Beauty] line." *Id.*

ACE contends that this case is like *Zatarain's* because everywhere ACE uses the term "Medical Exercise Specialist" the term is in the same size, font, and color as surrounding words, and that it is like *Dessert Beauty* because ACE always uses its trademark, ACE, with the term "medical exercise specialist." Dkt. 27. Thus, ACE urges the court to conclude that it is not using the term as a trademark and is merely using the term in a descriptive sense.

Jones argues that ACE's use of the mark "ACE" on the same marketing materials as the term "Medical Exercise Specialist" shows that ACE intended the term to be *part* of its source-identifying mark. *Id.* Jones additionally asserts that a jury could easily determine that the term "medical exercise specialist" is featured far more prominently in ACE's marketing materials than the mark "ACE." *Id.*

Jones relies on the following cases to support his contention that using the ACE mark with the term "Medical Exercise Specialist" is not determinative: *Hamdan v. Tiger Brothers Food Mart, Inc.*, 2016 WL 1192679, at *4 (M.D. La. Mar. 22, 2016); *Elvis Presley Enterprises*, 141 F.3d at 203–04; and *Pet Silk, Inc. v. Jackson*, 481 F. Supp. 2d 824, 830 (S.D. Tex. 2007)). In *Hamdan*, the federal district court for the Middle District of Louisiana considered whether to grant a motion for default judgment in a case in which the plaintiff, owner of trademark rights to the phrase "BROTHERS FOOD MART," sought an injunction against the use of "BROTHER'S" and "BROTHER'S FOOD MART" by the defendant, Tiger Brother's Food Mart, Inc. *Hamdan*, 2016 WL 1192679, at *1. The fair use defense was not discussed in the court's order, as the court was considering a motion for default judgment to which there was no response. The court did note that

"TIGER BROTHERS FOOD MART" and "BROTHERS FOOD MART" were "effectively identical marks, notwithstanding the Defendant's addition of the word Tiger."  *Id.* at *4.  It made this determination during its "likelihood of confusion" analysis, which is an analysis relating to the determination of whether the plaintiff sufficiently set out a false designation of origin claim and is inconsequential to the fair use defense.  *See id.* at *3–4; *see also KP Permanent Make-Up, Inc.*, 543 U.S. at 124 (finding that the defendant doe not have a burden to negate likelihood of confusion as part of the statutory fair use defense).

The *Elvis* case also was not discussing fair use.  *See Elvis Presley Enters., Inc.*, 141 F.3d at 203 (noting that the defendant asserted defenses of laches and acquiescence and not discussing the defense of fair use).  In *Petsilk*, the court discussed that the alleged infringer displayed a disclaimer on its page and that there was thus no likelihood of confusion, again in the context of whether the plaintiff met its burden, not in the context of the fair use defense.  481 F. Supp. 2d at 830.  These cases are thus not helpful to the analysis.

The court has reviewed the marketing materials and agrees that there are many similarities between this case and *Dessert Beauty*.  Like in *Dessert Beauty*, ACE generally has its trademarked term, ACE, on all of its materials relating to its "Medical Exercise Specialist" certification. Additionally, if ACE were using "Medical Exercise Specialist" as a mark, it would be using two marks on one "item," similar to the use of "Sexy Girls Have Dessert" being used on the same perfume as the allegedly infringing "love potion" phrases.  As the *Dessert Beauty* court noted, generally there are not two phrase serving as marks on one package.  Of course, ACE markets its class on a website, which is quite different than a small perfume bottle.  An additional similarity between this case and *Dessert Beauty* is that in *Dessert Beauty* the term "love potion" was used as part of other phrases, such as "love potion fragrance" or "belly button love potion fragrance."  968

37

F. Supp. 2d at 424.  Here, ACE usually uses the word "certification" with the term "Medical Exercise Specialist," though in some places it does not.  *See* Dkt. 5 ¶ 18.

There are, however, many differences between this case and the cases on which ACE relies. Unlike *Dessert Beauty* and *Zatarain's*, there is a question of fact here regarding the prominence of the term "Medical Exercise Specialist" in relation to the prominence of the term "ACE."  For instance, in a webpage that is copied into the amended complaint, the mark "ACE" appears on the top left-hand side of the page, and it is used in the text in various places, including one place where it is placed next to "Medical Exercise Specialist" as if it were part of that term.  Dkt. 5 ¶ 18. However, the title line of the text portion of the website is "MEDICAL EXERCISE SPECIALIST CERTIFICATION," and does not contain the mark "ACE."  *Id.*  The photo on the top of the page also contains the caption, "BECOME A CERTIFIED MEDICAL EXERCISE SPECIALIST" without the mark "ACE."  *Id.*  This caption is in white block letters that are larger than all of the surrounding text.  *Id.*  Additionally, there is a red block of text that is larger than the other text in the body of the page that emphasizes: "AS A CERTIFIED MEDICAL EXERCISE SPECIALIST, YOU'LL BE A CRITICAL LINK BETWEEN CLINIC AND COMMUNITY."  *Id.*  Again, the mark "ACE" is not used in conjunction with the term "Medical Exercise Specialist" in this block of text.  All of the aforementioned uses of the term "Medical Exercise Specialist" on this webpage are in larger font than the "ACE" mark at the top of the page.  The court thus disagrees with ACE regarding the prominence of its mark versus the term "Medical Exercise Specialist."  Another distinction between this case and *Dessert Beauty* is that the alleged infringer in *Dessert Beauty* displayed its own mark prominently and always put the trademark symbol next to it. 568 F. Supp. 2d at 424.  Here, ACE does not always place the trademark symbol next to its "ACE" mark, and its mark is not more prominent than the term "Medical Exercise Specialist" in some of its materials.

The court notes that this is a close call, but finds that there are too many questions of fact infused in the analysis to find as a matter of law that ACE did not use the term "Medical Exercise Specialist" as a mark.  While generally this would end the analysis, since it is such a close call, the court will also consider the next step—whether the term is used in a descriptive sense.

### 2.      Use in a Descriptive Sense

Jones also asserts that there is a question of material fact with regard to ACE's fair use defense because the term "Medical Exercise Specialist" is "suggestive," not "descriptive."  Dkt. 37 at 14**.**  The fair use "defense is only available for descriptive terms and only when the term is used in its descriptive sense rather than its trademark sense."  *Zatarain's, Inc.*, 698 F.2d at 791.  A *suggestive* term suggests, rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods or services."  *Id.* at 790–91.  A mark that is suggestive is "deemed inherently distinctive and [is] entitled to protection," whereas a descriptive mark is "not inherently distinctive" and may only "acquire the distinctiveness which will allow [it] to be protected."  *Two Pesos, Inc.*, 505 U.S. at 769.  "An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning."  *Id.*  "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself."  *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11, 102 S. Ct. 2182 (1982).

When determining how to classify a mark, courts often start with the dictionary definition. *Zatarain's*, 698 F.2d at 792; *see also Dessert Beauty*, 568 F. Supp. 2d at 425 (quoting dictionary.com in its analysis of whether the term "love potion" was used descriptively).  They also may apply an

"imagination test," which "seeks to measure the relationship between the actual words of the mark and the product to which they are applied." *Zatarain's*, 698 F.2d at 792.  If the term "requires imagination, thought and perception to reach a conclusion as to the nature of goods, . . . it is considered a suggestive term.  Alternatively, a term is descriptive if standing alone it conveys information as to the characteristics of the product." *Id.*  Courts also consider "'whether competitors would be likely to need the terms used in the trademark in describing their products.'"  *Id.* at 793 (quoting *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 379 (7th Cir. 1976)).  "A descriptive term generally relates so closely and directly to a product or service that other merchants marketing similar goods would find the term useful in identifying their own goods." *Id.*  The final consideration is the "extent to which a term actually has been used by others marketing a similar service or product." *Id.*  "The correct categorization of a given term is a factual issue." *Id.*

ACE points out that Jones admitted in his deposition that both "medical exercise" and "exercise specialist" are generic and unprotectable.  Dkt. 27 at 16.  ACE thus argues that Jones's argument that the term is suggestive as "unsupported and incredible in view of Jones' own testimony."  Dkt. 44 at 4.  In the cited testimony, Jones agreed (1) that he did not have rights to the terms "medical exercise training" or "medical exercise"; (2) that when he first started using the term "Medical Exercise Specialist," there was another company using the term "medical exercise therapy"; (3) that others use the term "exercise specialist" and he has not objected to their using the term; and (4) that he is aware that the term "specialist" is used frequently in the fitness industry.  Dkt. 27, Ex. 18 at 32–33, 106–107, 119–121, 125–31, 155–57.  Of course, this evidence relates to portions of the term, not the entire term.

Jones argues that the entire term, "medical exercise specialist," is not in the dictionary, and this absence indicates distinctiveness.  Dkt. 37.  He also contends that ACE itself used a different

term to describe its program for years, so it does not make sense that it would need to use the term "medical exercise specialist" to describe its services. Dkt. 22.  Jones contends that consumers must exercise imagination to connect the name "Medical Exercise Specialist" with the products.  *Id.* Additionally, Jones argues that there is a lack of widespread use of the term, which indicates it is suggestive, not descriptive.  *Id.*

ACE notes that it chose the name "Medical Exercise Specialist" as opposed to, for instance, "medical exercise professional," because the word "specialist" means "'a person who has a special knowledge and skill relating to a particular job, area of study, etc.'" Dkt. 27 at 12 (quoting Ex. A-17, dictionary definition of "specialist").  It argues that no other words convey the same description.  *Id.* ACE additionally contends that the term is used extensively by others in the industry, and cites expert testimony indicating that a website called personaltraineredu.org, an organization that offers corporate wellness programs called Vital Management, and educational organizations such as the American Fitness Professionals Association (AFPA), all "talk about Medical Exercise Specialists." Dkt. 27 & Ex. A-2 at 58–60.  Jones points out that two of these groups, Vital Management and AFPA, are directly related to Jones's course, and the website personaltraineredu.org "appears to have been posted . . . after ACE started infringing." Dkt. 22.  Jones also notes, in the alternative, that the term acquired distinctiveness through *Jones's* continual and exclusive use of the name for more than two decades.  *Id.*

First, the court considers the dictionary definition.  In *Zatarain's*, fish fri described a product that was used when frying fish.  *See* 698 F.2d at 796.  In *Dessert Beauty*, the court found the term "love potion" was used to describe the promised effects of the perfume.  568 F. Supp. 2d at 425.  The dictionary definition of specialist leaves little to the imagination as to what that portion of the term

means, and it is clear what that portion is trying to describe.  However, as Jones points out, there is no definition of the entire term.

Next, the court turns to the imagination test.  While "Medical Exercise Specialist" would, using the imagination test, indicate that it describes a person who specializes in "Medical Exercise," what that means requires some imagination.  Does the person specialize in exercises for people who have undergone recent medical procedures?  Or do they use special medical-grade equipment?  Are they similar to physical therapists?  Would one need a prescription to see a medical exercise specialist?  The imagination test does not result in a slam-dunk case that the phrase is descriptive.

The next consideration is whether competitors would be likely to need the terms used in the trademark in describing their products.  The fact that ACE used other terms to describe a similar program for many years weighs against a finding that other competitors would need to use the term "Medical Exercise Specialist" to describe their programs.  Of course, ACE's focus group found it to be the best term, which weighs in ACE's favor, but not as heavily.

The final factor the court considers is the extent to which others have used the term.  While ACE has highlighted some use of the term by others, most of its evidence relates to parts of the term, not the entire term.  And Jones points out that some of the instances in which other companies have used the entire term are of companies that had permission to use the term because they took Jones's class.  Thus, there appears to be a question of fact as to the extent that other companies have used the term.

Because there is evidence that this exact term is not necessary to describe the same type of services and other companies did not have a need to use the entire term previously, there is a question of material fact as to whether the term is descriptive or suggestive that precludes summary judgment on the fair use defense.  There are thus questions of material fact as to both whether the

term is used as a mark and whether the term is descriptive.  Accordingly, there is no need at this point to discuss whether ACE used the term in good faith.  ACE's motion for summary judgment on its fair use defense is DENIED.

## C.     Use as a Certification Mark

ACE contends that Jones does not own a valid, protectable trademark because he impermissibly used the phrase "Medical Exercise Specialist" as both a certification mark and a trademark in violation of 15 U.S.C. § 1064(5)(B), which ACE argues invalidates the mark.  ACE notes that Jones uses the term "Medical Exercise Specialist" as the name for the certification he provides and also produces and sells products bearing the same mark.  Dkt. 27 at 22–23.  Jones argues that no court has used § 1064(5)(B) to invalidate a common-law trademark or service mark and that, regardless, he has complied with the statute.  Dkt. 37 at 21–22.  Moreover, he notes that even if he had violated the statute, the only consequence is cancellation of the certification mark, which does not impact Jones's use of the mark as a trademark or service mark.  *Id.* at 22.

> Under 15 U.S.C. § 1127, the term "certification mark" means
>
> [A]ny word, name, symbol, or device, or any combination thereof—
> (1) used by a person other than its owner, or
> (2) which its owner has a bona fide intention to permit a person other
> than the owner to use in commerce and files an application to register
> on the principal established by this chapter,
> to certify regional or other origin, material, mode of manufacture,
> quality, accuracy, or other characteristics of such person's goods or
> services or that the work or labor on the goods or services was
> performed by members of a union or other organization.

Under 15 U.S.C. § 1064(5)(B), which relates to registered certification trademarks, if the owner of a registered certification trademark "engages in the production or marketing of any goods or services to which the certification mark is applied," a person who believes he is or will be damaged by the continued registration of the mark, may file a petition to cancel the registration.

43

Here, Jones does not have a registered certification mark and ACE has not filed a petition to cancel the registration.  Section 1064(5)(B) is not applicable.  ACE's motion for summary judgment on this ground is DENIED.

## D.    Naked Licensing

ACE's final argument is that Jones has failed to control the quality of services under his alleged mark in granting and failing to police naked licenses, such that the term he contends he owns has lost any significance it might have otherwise had as a source-indicating mark, in violation of 15 U.S.C. § 1127.  Dkt. 27 at 23.  "A naked license is a trademark licensor's grant of permission to use its mark without attendant provisions to protect the quality of the goods or services provided under the licensed mark. . . . A trademark owner's failure to exercise appropriate control and supervision over its licensees *may* result in abandonment of trademark protection for the licensed mark."  *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1075 (5th Cir. 1997).  If a court finds a trademark owner has abandoned its trademark, "the owner would be estopped from asserting rights to the trademark."  *Moore Bus. Forms, Inc. v. Ryu*, 960 F.2d 486, 489 (5th Cir. 1992).  "[T]he proponent of a naked license theory 'faces a stringent standard' of proof."  *Id.* (quoting *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1113 (5th Cir. 1991)).  "[T]here is no control requirement when a trademark owner consents to another party's defined usage of the trademark."  *Id.*

ACE points out that Jones testified that people who pass his Medical Exercise Specialist exam do not have to check in with Jones again and that there is no written license agreement for their use of the term.  Dkt. 27.  Specifically, Jones testified that graduates of his program may use the "Medical Exercise Specialist designation" "to promote themselves and/or their practices or businesses."  Dkt. 27, Ex. A-18 at 45.  He also testified that his graduates have continuing education requirements but that if they do not keep current they can still call themselves "Medical Exercise

44

Specialists" because they had gone through the course. *Id.* at 53–54. Jones additionally testified that individuals who pass the test are authorized via letter to use the "Medical Exercise Specialist" logo on their business cards and website. *Id.* at 279. As far as a licensing agreement, Jones noted that the letter that the examinees receive when they pass the exam authorizes them to use the logo, that this authorization is subject to his company's "mission statement," and that he could withdraw the authorization if the individual did not provide professional and appropriate services. *Id.* at 286–87.

Jones argues that he exercises total control over which people may call themselves "Medical Exercise Specialists" by requiring dozens of lessons and quizzes and requiring them to take a two-part final examination. Dkt. 37. He asserts that he did not abandon quality control because he maintains appropriate control over who can use the mark by requiring them to complete the rigorous coursework and pass the examination. *Id.* Additionally, Jones argues that ACE cannot prove naked licensing because it cannot show that Jones's mark has lost trademark significance. *Id.* (citing *Exxon*, 109 F.3d at 1080). Jones provides declarations of individuals who state that they associate the term "Medical Exercise Specialist" exclusively with Jones's program. *See, e.g.*, Dkt. 37, Ex. 2A (Jackson Dec.) ("In my mind, "Medical Exercise Specialist" refers exclusively [to] the course and certification offered by Dr. Jones."); (Harris Dec.) (noting that before Esquerre told her she needed to contact Jones about the Medical Exercise Specialist program, she had "never heard anyone call themselves a Medical Exercise Specialist" and stating that the term was "completely unique and distinctive"); (Godfrey Dec.) ("In my mind, Medical Exercise Specialist is the exclusive brand name for the course and certification offered by Dr. Michael Jones."); (Duttge Dec.) ("'Medical Exercise Specialist' is absolutely, unequivocally, without a doubt the name that solely identifies the course and certification offered by Dr. Jones."); (Moelis Dec.) ("In my mind, the name 'Medical Exercise Specialist' has always exclusively meant the course and certification offered by Dr. Jones.").

45

The court finds that Jones has sufficiently shown that there is a question of fact as to whether ACE can meet the stringent requirements of showing that Jones abandoned his mark. ACE's motion for summary judgment on its naked licensing defense is DENIED.

## VI. CONCLUSION

Jones's objections to ACE's summary judgment evidence (Dkts. 39, 49) are SUSTAINED IN PART AND OVERRULED IN PART. The motions (Dkts. 39,49) are thus GRANTED IN PART AND DENIED IN PART. The objections to Exhibits A-4 through A-7, A-53, and A-115 are SUSTAINED. Additionally, the objections to the hearsay within hearsay in Exhibits A-29 and A-35 are SUSTAINED. The objection to the second-to-the-last sentence in paragraph 4 of Exhibit A-40 and the objection to the hearsay aspects of paragraph 5 of that exhibit are SUSTAINED. The evidentiary objections are otherwise OVERRULED.

ACE's motion to exclude expert Robert Esquerre (Dkt. 46) is GRANTED IN PART AND DENIED IN PART. It is GRANTED in that Esquerre may not testify as to any legal conclusions. It is otherwise DENIED.

ACE's motion for summary judgment is DENIED.

Signed at Houston, Texas on October 18, 2016.

_____
Gray H. Miller
United States District Judge